### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN

DOUG COATES and MARCIA HILLE,
individually and on behalf of all others
similarly situated,

                       Plaintiffs,

      v.

FOREMOST INSURANCE COMPANY,

                     Defendant.

Civil Action No. 1:20-cv-00383

Honorable Judge Janet T. Neff

**JURY TRIAL DEMANDED**

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Doug Coates and Marcia Hille, individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), bring this First Amended Class Action Complaint against Defendant Foremost Insurance Company ("Foremost"), and in support thereof state the following:

### I.      NATURE OF THE ACTION

1.     Plaintiffs operate Three Capes Vacations, through which they provide short term vacation rentals at two cottages in Netarts, Oregon.  Since March 2020, Plaintiffs have been unable to offer or fully offer vacation rentals at their cottages because of SARS-CoV-2, sometimes called "Coronavirus" or by one of the names of the disease that it causes and that spreads it.  For ease of reference, SARS-CoV-2 will be referred to as "COVID-19" herein.

2.     Due to COVID-19, Plaintiffs' cottages have suffered direct sudden and unexpected "physical loss" – under the plain meaning of that term. Any jury would find that the cottages have suffered a physical loss because COVID-19 impaired the cottages by making them unusable in a way they had been used prior to the outbreak of COVID-19.

3.      Instead of being able to welcome visitors and fill the cottages with guests, Plaintiffs were forced to close their cottages for several months which resulted in the cottages being unable to be used for their intended business purpose as short-term rentals.

4.      This loss is direct. Plaintiffs are not asking Foremost to reimburse them after someone obtained a judgment against Plaintiffs for getting guests sick. That might be an indirect loss. Plaintiffs are asking Foremost to pay for their loss of rents occasioned directly by being unable to rent their cottages.

5.      The loss is sudden and accidental.  It was neither intended nor expected by Plaintiffs.

6.      This loss is physical. The interior spaces of the cottages cannot be used in the manner in which they had previously been used. The probability of illness prevents the use of the space in no less of a way than, on a rainy day, a crumbling and open roof from the aftermath of a tornado would make the interior space of a business unusable.

7.      This loss is a loss. It is the loss of functionality of the space for business purposes. It is the diminishment of the physical space in the cottages. What once could hold many now can safely hold only a few, or none at all.

8.      The impairment of the business function is also damage to the cottages.

9.       Insurers around the country now desire for federal and state judges to interpret the words "physical loss" but those words need no interpretation. Insurers would like for courts to alter the meaning of those terms rather than allow for a jury to apply the facts of the case to these ordinary words and reach a verdict in the same way a jury would reach a verdict if called upon to answer whether a person was injured or property was damaged.

10.    To protect their vacation rental business in the event that they suddenly had to suspend operations for reasons outside of their control, Plaintiffs purchased insurance coverage from Foremost, including property coverage, as set forth in Foremost's Dwelling Fire Three Policy Form (Form 11003 03/06) ("Property Coverage Form").

11.    Foremost's Property Coverage Form promises to pay for "Loss of Rents" if an insured loss occurs at an insured dwelling.

12.    It also covers "Loss of Rents" when damage occurs at a neighboring premises and civil authorities prohibit occupancies of the insured dwelling.

13.    Plaintiffs suffered "Loss of Rents" and were unable to accept renters at their cottages, which are insured dwellings, due to physical loss at the cottages caused by COVID-19 and the resultant closure orders and resolutions issued by civil authorities in Oregon.

14.    Plaintiffs also suffered "Loss of Rents" and were unable to accept renters at their cottages after physical loss occurred at neighboring premises and civil authorities prohibited occupancy of the cottages.

15.    Upon information and belief, Foremost has, on a widescale and uniform basis, refused to pay its insureds under its Loss of Rent coverage for losses suffered due to COVID-19 and any orders by civil authorities that prohibited occupancies at insured dwellings.  Indeed, Foremost denied Plaintiffs' claims for coverage for losses under their Foremost policies. Foremost, as well as the entire insurance industry that Foremost is part of, also actively dissuaded policyholders from filing claims, repudiating coverage.

## II.    JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and Plaintiffs are citizens of different states, and because: (a) the Class consists of at

least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District.

### III.    THE PARTIES

*Plaintiffs*

18.     Plaintiffs Coates and Hille are married Oregon residents, domiciled in Portland, Oregon.

*Defendant*

19.     Defendant Foremost is a Delaware corporation, with its principal place of business in Caledonia, Michigan.

### IV.    FACTUAL BACKGROUND

A.     *The Property Coverage Form*

20.     In return for the payment of a premium, Foremost issued Policy No. 381-5003308269-01 to Plaintiffs for a period of January 16, 2020 to January 16, 2021, including a Property Coverage Form.  *See* Policy No. 381-5003308269-01 Dkt. 1-1.  Plaintiffs have performed all of their obligations under Policy No. 381-5003308269-01, including the payment of premiums. The Covered Property, with respect to the Property Coverage Form, is 1170 3rd Street, Tillamook, Oregon 97141.

21.     In return for the payment of a premium, Foremost also issued Policy No. 381-5003308231-01 to Plaintiffs for a period of January 16, 2020 to January 16, 2021, including a Property Coverage Form.  *See* Policy No. 381-5003308231-01 Dkt. 1-2fexh.  Plaintiffs have performed all of their obligations under Policy No. 381-5003308231-01, including the payment of

premiums.  The Covered Property, with respect to the Property Coverage Form, is 1160 3rd Street, Tillamook, Oregon 97141.   The Covered Property includes the cottages, which are insured dwellings.

22.    In many parts of the world, property insurance is sold on a specific peril basis.  Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Foremost, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.  With respect to the Property Coverage Form provided to Plaintiffs, Foremost agreed to pay for "Insured Perils," meaning "direct, sudden, and accidental physical loss" to property.

23.    Losses due to COVID-19 are an Insured Peril under Foremost policies with the Property Coverage Form.

24.    The Property Coverage Form promises to pay for "Loss of Rents."

25.    As part of the "Loss of Rents" coverage, in the Property Coverage Form, Foremost promises to pay for loss of normal rents for up to two weeks if damage caused by an Insured Peril occurs at a neighboring premises and civil authorities prohibit occupancies of the insured dwelling.

26.    Due to the presence of COVID-19, Plaintiffs' property and that of the other Class Members have suffered physical loss. Due to COVID-19, their properties have become unsafe for their intended purpose and thus suffered physical loss or damage. Their properties' business functions have been impaired. If Plaintiffs and other Class Members continued to conduct business as usual prior to COVID-19, the virus would manifest, and guests, employees, and other visitors to the properties would risk infection and serious illness or death. This is not a non-physical or

remote loss such as one occasioned by a breach of contract, loss of a market, or the imposition of a governmental penalty. Instead, it is a physical loss because of the changed physical environment.

27. Moreover, the presence of virus or disease constitutes physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, The Insurance Services Office ("ISO"), circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

28. The presence of virus or disease has resulted in physical loss to Covered Property and neighboring property in that manner in this case.

29. Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the "Loss of Rents" coverage in the Property Coverage Form.

**B.    *The Covered Cause of Loss***

30. The threat and presence of COVID-19 is physical loss to property. In response to physical loss to property due to COVID-19, civil authorities across the United States issued orders prohibiting occupancy of vacation lodgings, including short term vacation rentals and requiring the suspension or restriction of business at a wide range of establishments, including civil authorities with jurisdiction over business activities at Plaintiffs' vacation rental properties (the

"Closure Orders"). Indeed, many governmental bodies specifically found that COVID-19 causes property damage when issuing stay at home orders. *See* N.Y.C. Emergency Exec. Order No. 100, at 2 (Mar. 16, 2020)[1] (emphasizing the virulence of COVID-19 and that it "physically is causing property loss and damage"); Harris Cty. Tex. Office of Homeland Security & Emergency Mgmt., Order of Cty. J. Lina Hidalgo, at 2 (Mar. 24, 2020)[2] (emphasizing that the COVID-19 virus can cause "property loss or damage" due to its contagious nature and transmission through "person-to-person contact, especially in group settings"); Napa Cty. Cal. Health & Human Service Agency, Order of the Napa Cty. Health Officer (Mar. 18, 2020)[3] (issuing restrictions based on evidence of the spread of COVID-19 within the Bay Area and Napa County "and the physical damage to property caused by the virus"); City of Key West Fla. State of Local Emergency Directive 2020-03, at 2 (Mar. 21, 2020)[4] (COVID-19 is "causing property damage due to its proclivity to attach to surfaces for prolonged periods of time"); City of Oakland Park Fla. Local Public Emergency Action Directive, at 2 (Mar. 19, 2020)[5] (COVID-19 is "physically causing property damage"); Panama City Fla. Resolution No. 20200318.1 (Mar. 18, 2020)[6] (stating that the resolution is necessary because of COVID-19's propensity to spread person to person and because the "virus physically is causing property damage"); Exec. Order of the Hillsborough Cty. Fla. Emergency Policy Group, at 2 (Mar. 27, 2020)[7] (in addition to COVID- 19's creation of a "dangerous physical condition," it also creates "property or business income loss and damage in certain circumstances"); Colorado Dep't of Pub. Health & Env't, Updated Public Health Order No. 20-

---

[1] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf
[2] https://www.taa.org/wp-content/uploads/2020/03/03-24-20-Stay-Home-Work-Safe-Order_Harris- County.pdf
[3] https://www.countyofnapa.org/DocumentCenter/View/16687/3-18-2020-Shelter-at-Home-Order
[4] https://www.cityofkeywest-fl.gov/egov/documents/1584822002_20507.pdf
[5] https://oaklandparkfl.gov/DocumentCenter/View/8408/Local-Public-Emergency-Action-Directive-19-March-2020-PDF
[6] https://www.pcgov.org/AgendaCenter/ViewFile/Item/5711?fileID=16604
[7] https://www.hillsboroughcounty.org/library/hillsborough/mediacenter/
documents/administrator/epg/saferathomeorder.pdf

24, at 1 (Mar. 26, 2020)[8] (emphasizing the danger of "property loss, contamination, and damage" due to COVID-19's "propensity to attach to surfaces for prolonged periods of time"); Sixth Supp. to San Francisco Mayoral Proclamation Declaring the Existence of a Local Emergency, 26 (Mar. 27, 2020)[9] ("This order and the previous orders issued during this emergency have all been issued … also because the virus physically is causing property loss or damage due to its proclivity to attach to surfaces for prolonged periods of time"); and City of Durham NC, Second Amendment to Declaration of State of Emergency, at 8 (effective Mar. 26, 2020)[10] (prohibiting entities that provide food services from allowing food to be eaten at the site where it is provided "due to the virus's propensity to physically impact surfaces and personal property").

### 1.  *The COVID-19 Pandemic*

31.    According to the CDC, "COVID-19 is a contagious respiratory illness caused by infection with a new coronavirus (called SARS-CoV-2, the virus that causes COVID-19)."[11] "The virus that causes COVID-19 most commonly spreads between people who are in close contact with one another (within about 6 feet, or 2 arm lengths)."[12] "It spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes."[13]

32.    "A person may get COVID-19 by touching the surface or object that has the virus on it and then touching their own mouth, nose, or eyes."[14] A scientific study investigating the stability of COVID-19 in different environmental conditions found that, following COVID-19

---

[8] https://www.pueblo.us/DocumentCenter/View/26395/Updated-Public-Health-Order---032620
[9] https://sfgov.org/sunshine/sites/default/files/sotf_061020_item3.pdf
[10] https://durhamnc.gov/DocumentCenter/View/30043/City-of-Durham-Mayor-Emergency-Dec-Second- Amdmt-3-25-20_FINAL
[11] *Coronavirus Disease 2019 (COVID-19), People With Seasonal Allergies*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#People-with-Seasonal-Allergies.
[12] *Coronavirus Disease 2019 (COVID-19), Spread*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread.
[13] *Id.*
[14] *Id.*

contamination, the virus could be detected hours later for tissues and paper, days later for wood, cloth and glass, or even a week later for stainless steel and plastic.[15] Other studies have found that COVID-19 remains stable and active on plastic, stainless steel, glass, money, and wood ranging from three to seven days and all the way up to one month if left at or around room temperature.[16]

33.    Those materials are all used at the cottages in this case.

34.    Further studies have also indicated that COVID-19 can spread through the air and can be transmitted from person to person through heating and ventilation (HVAC) systems.[17]

35.    The Environmental Protection Agency ("EPA") has recommended that business owners make improvements to their premises HVAC and ventilation systems based on several studies that show "epidemiological evidence suggestive of [coronavirus] transmission through aerosol."[18]

36.    Further, the CDC advised travelers that "[t]ravel increases your chance of getting and spreading COVID-19. Staying home is the best way to protect yourself and others from COVID-19. You can get COVID-19 during your travels. You may feel well and not have any symptoms, but you can still spread COVID-19 to others."[19]

---

[15] *See* Alex W.H. Chin, et al., Stability of SARS-CoV-2 in different environmental conditions, The Lancet Microbe (April 2, 2020), https://doi.org/10.1016/S2666-5247(20)30003-3.
[16] https://www.nejm.org/doi/full/10.1056/nejmc2004973 (last viewed on Dec. 16, 2020); https://www.medrxiv.org/content/10.1101/2020.05.07.20094805v1.full.pdf (last viewed on Dec. 16, 2020); https://virologyj.biomedcentral.com/articles/10.1186/s12985-020-01418-7 (last viewed on Dec. 16, 2020).
[17] *See* https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article#r2 (last viewed Dec. 16, 2020); https://www.researchsquare.com/article/rs-34643/v1 (last viewed Dec. 16, 2020).
[18] *See* https://www.epa.gov/coronavirus/indoor-air-and-covid-19-key-references-andpublications (last viewed Dec. 16, 2020); https://www.epa.gov/coronavirus/indoor-air-and-coronavirus-covid-19 (last viewed Dec. 16, 2020) (suggesting facilities make improvements to their ventilation and HVAC systems by increasing ventilation with outdoor air and air filtration).
[19] *Coronavirus Disease 2019, Travel During COVID-19,* https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftravelers%2Ftravel-in-the-us.html.

**2.      *The Closure Orders***

37.     On March 22, 2020, Tillamook County issued Resolution #R-20-006, which required the closure of all transient lodging facilities, including short-term vacation rentals.  This order went into effect at noon on March 23, 2020.

38.     On May 13, Tillamook County issued Resolution #R-20-013 which continued the closure of all transient lodging facilities, including short-term vacation rentals until May 29, 2020.

39.     After May 29, 2020, Resolution #R-20-013 placed continued restrictions on all transient lodging facilities, including short-term vacation rentals as to how the property could be used including but not limited to "a minimum 24-hour turnaround time be maintained between guests to provide a safer environment for housekeeping personnel to conduct cleaning and sanitizing practices."

40.     On June 10, 2020, Resolution #R-20-020 amended the transient lodging guidelines by mandating compliance with the Oregon Health Authority cleaning guidelines, which did not require transient lodging providers to adhere to the 24-hour turnaround time between guests.

41.     These Tillamook County Closure Resolutions were issued in response to the spread of COVID-19 throughout Oregon.

42.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other Class members lost rental income.

**3.      *The Physical Presence and Demonstrable Impact of COVID-19 and the Closure Orders***

43.     Physical droplets that contain COVID-19 can settle on objects and surfaces. Once there, COVID-19 can remain present for hours or even days.

44.    In addition, and as discussed supra, COVID-19 causes physical loss and damage by, but not limited to, destroying, attaching to, corrupting, distorting, infesting, and physically altering property, including its surfaces, and by rendering property unusable, uninhabitable, unfit for intended function, dangerous and unsafe. Despite Plaintiffs ongoing mitigation efforts, COVID-19 has caused such physical loss and damage to their Covered Property, as discussed below.

45.    For example, respiratory droplets respired from an infected person lands on and adheres to surfaces and objects.[20] By doing so, they become part of that surface, thus physically changing the property itself and its surface. This physical alteration makes physical contact with these once safe surfaces unsafe.

46.    Further, when an individual infected with COVID-19 breathes, talks, coughs, or sneezes, they expel aerosolized droplet nuclei that remain in the air and, just like dangerous fumes, make the property unsafe and actively dangerous.[21] This alters the physical properties of the air in a building from safe and breathable to unsafe and dangerous.

47.    Fomites, aerosols, respiratory droplets, and droplet nuclei containing COVID-19 are not theoretical. In fact, they are physical substances that are active on physical surfaces and in the air and have a tangible and dangerous existence.[22]

48.    When COVID-19 adheres onto a surface or material, it becomes part of that surface or material, changing them to fomites.[23] This is a physical change in the impacted surface or

---

[20] https://www.ncbi.nlm.nih.gov/books/NBK143281/.
[21] *Id.*
[22] https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention precautions.
[23] *Id.*

material and constitutes physical loss and damage requiring remedial measures in order to attempt eliminating COVID-19's presence thereon.

49.    The presence of COVID-19 and/or the presence of infected persons within a facility causes physical loss by transforming it from a facility that once was safe and usable for its intended purpose into a facility that is not only unsafe and unusable, but also dangerous and potentially deadly for its patrons.

50.    Furthermore, the presence of COVID-19 on a property creates an imminent threat of more damage to not only that property, but also to property nearby. For example, a business' patron who came into contact with fomites or respiratory droplets when opening the door, will carry those same fomites and/or droplets on their hands and contaminate another surface in the business or into the next place that they go, causing more physical damage and loss.

51.    Plaintiffs operate their vacation properties in Tillamook County. With the spread of COVID-19 likely beginning as early as November, 2019 and the rate of infection in Tillamook County in March, 2020, as a matter of statistical probability, guests with COVID-19 *must* have been within their properties.

52.    COVID-19 has rendered Plaintiffs' properties unfit for their intended business functions. In their current conditions, Plaintiffs' properties are not functional for their business purposes because of the changed physical environment due to COVID-19. COVID-19 also presented an imminent threat of immediate damage or loss to Plaintiffs' properties, forcing Plaintiffs to take costly action to prevent further damage or loss.

53.    As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and other Class Members suffered "Loss of Rents" losses.

54. The Closure Orders resulted from covered causes of loss by impairing access to and business functions of Plaintiff's and the other Class Members' Covered Property.

55. Plaintiffs submitted their claims for losses to Foremost under the Policy due to the presence of COVID-19 and the resultant Closure Orders. Upon information and belief, Foremost has, on a uniform basis, refused to pay claims for losses and costs due to COVID-19 and the resultant Closure Orders covered by the insurance provisions identified in this Class Action Complaint to all Class Members under the Foremost policy. Indeed, Foremost has repudiated coverage for Plaintiffs' claim under the Policy.

## V.    CLASS ACTION ALLEGATIONS

56. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

57. Plaintiffs seek to represent nationwide classes defined as:

- All persons and entities that: (a) had Loss of Rents coverage under a property insurance policy issued by Foremost; (b) suffered a loss of rents because of physical loss at covered properties, or because of civil authorities prohibiting occupancy of an insured dwelling due to the presence of COVID-19; (c) made a claim under their property insurance policy issued by Foremost, and (d) were denied Loss of Rents coverage by Foremost (the "Loss of Rents Breach Class").

- All persons and entities with Loss of Rents coverage under a property insurance policy issued by Foremost that suffered a loss of rents because of physical loss at covered properties, or because of civil authorities prohibiting occupancy of an insured dwelling due to the presence of COVID-19 (the "Loss of Rents Declaratory Judgment Class").

- All persons and entities that: (a) had Loss of Rents coverage under a property insurance policy issued by Foremost; (b) suffered a loss of rents because of physical loss at covered properties, or because of civil authorities prohibiting occupancy of an insured dwelling due

to the presence of COVID-19; and (c) suffered a repudiation by Foremost (the "Loss of Rents Repudiatory Breach Class").

58.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

59.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

60.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

61.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.   whether the Class suffered a covered loss based on the common policies issued to members of the Class; and

    b.   whether Foremost's "Loss of Rents" coverage applies to a loss of rental income caused by the orders of civil authorities prohibiting rental occupancy of an insured dwelling due to the presence of COVID-19.

14

62.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendant's refusal to pay under its Loss of Rents coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

63.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

64.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Loss of Rents coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant.  Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

65.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**
Defendant acted or refused to act on grounds generally applicable to Plaintiffs and the other Class
members, thereby making appropriate final injunctive relief and declaratory relief, as described
below, with respect to the Class members.

66.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**   A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
Individualized litigation creates a potential for inconsistent or contradictory judgments and
increases the delay and expense to all parties and the court system.  By contrast, the class action
device presents far fewer management difficulties, and provides the benefits of single adjudication,
economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT – LOSS OF RENTS COVERAGE
**(Claim Brought on Behalf of the Loss of Rents Breach Class and
the Loss of Rents Repudiatory Breach Class)**

67.     Plaintiffs repeat and reallege Paragraphs 1-66 as if fully set forth herein.

68.     Plaintiffs bring this Count individually and on behalf of the other members of the
Loss of Rents Breach Class and the Loss of Rents Repudiatory Breach Class (the "Breach Class").

69.     Plaintiffs' Foremost insurance policies, as well as those of the other Breach Class
members, are contracts under which Foremost was paid premiums in exchange for its promise to
pay Plaintiffs and the other Breach Class members' losses for claims covered by the policy.

70.     According to Plaintiffs' Foremost insurance policies, as well as those of the other
Breach Class members, Foremost agreed to pay for "Loss of Rents" in the event of an insured loss
at the Breach Class's property while the property is "not fit to live in or use."

71.     Foremost also agreed to pay of "the loss of normal rents" for up to two weeks if damage caused by an Insured Peril occurs at a neighboring premises and civil authorities prohibit occupancies of the insured dwelling.

72.     The physical loss caused by COVID-19 and the Closure Orders triggered the "Loss of Rents" provision under Plaintiffs' and the other members of the Breach Class's Foremost insurance policies.

73.     Plaintiffs and the other members of the Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Foremost or Foremost is estopped from asserting them, and yet Foremost has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.  Foremost has also actively dissuaded policyholders from filing claims, repudiating coverage.

74.     By denying and repudiating coverage for any rental losses incurred by Plaintiffs and other members of the Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Foremost has breached its coverage obligations under the policies.

75.     As a result of Foremost's breaches of the policies, Plaintiffs and the other members of the Breach Class have sustained substantial damages for which Foremost is liable, in an amount to be established at trial.

### COUNT II
### DECLARATORY JUDGMENT – LOSS OF RENTS COVERAGE
**(Claim Brought on Behalf of the Loss of Rents Declaratory Judgment Class)**

76.     Plaintiffs repeat and reallege Paragraphs 1-66 as if fully set forth herein.

77.     Plaintiffs bring this Count individually and on behalf of the other members of the Loss of Rents Declaratory Judgment Class (the "Declaratory Judgment Class").

78.     Plaintiffs' Foremost insurance policies, as well as those of the other Foremost Declaratory Judgment Class members, are contracts under which Foremost was paid premiums in exchange for its promise to pay Plaintiffs' and the other Declaratory Judgment Class members' losses for claims covered by the policy.

79.     Plaintiffs and the other Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Foremost or Foremost is estopped from asserting them, and yet Foremost has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

80.     Foremost has denied "Loss of Rents" claims related to physical loss and Closure Orders as a result of COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

81.     An actual case or controversy exists regarding Plaintiffs' and the other Declaratory Judgment Class members' rights and Foremost's obligations under the policies to reimburse Plaintiffs and the other Declaratory Judgment Class members for the full amount of covered "Loss of Rents" losses incurred by Plaintiffs and the other Declaratory Judgment Class members in connection with physical loss and Closure Orders prohibition on rentals stemming from the COVID-19 pandemic.

82.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Loss of Rents Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs' and the other Loss of Rents Declaratory Judgment Class Members' Loss of Rents losses incurred in connection with the physical loss to their property and

Closure Orders prohibiting rentals stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.   Foremost is obligated to pay Plaintiffs and the other Loss of Rents Declaratory Judgment Class members the full amount of the Loss of Rents coverage afforded in the Plaintiffs and the other Loss of Rents Declaratory Judgment Class members' policies related to the physical loss to their property and Closure Orders prohibiting rentals stemming from the COVID-19 pandemic.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in its favor and against Defendant as follows:

a.    Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.    Entering judgment on Count I in favor of Plaintiffs and the members of the Loss of Rents Breach Class and the Loss of Rents Repudiatory Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.    Entering declaratory judgments on Count II in favor of Plaintiffs and the members of the Loss of Rents Declaratory Judgment Class as follows:

i.   Plaintiffs' and the other Loss of Rents Declaratory Judgment Class Members' Loss of Rents losses incurred in connection with the physical loss to their property and Closure Orders prohibiting rentals stemming from the COVID-19 pandemic are insured losses under their policies; and

      ii.    Foremost is obligated to pay Plaintiffs and the other Loss of Rents Declaratory Judgment Class members the full amount of the Loss of Rents coverage afforded in the Plaintiffs and the other Loss of Rents Declaratory Judgment Class members' policies related to the physical loss to their property and Closure Orders prohibiting rentals stemming from the COVID-19 pandemic.

    d.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

    e.    Ordering Defendant to pay attorneys' fees and costs of suit; and

    f.    Ordering such other and further relief as may be just and proper.

## VII.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:  December 21, 2020          Respectfully submitted,

                           */s Amy E. Keller*
                           Amy E. Keller
                           Adam J. Levitt
                           **DiCELLO LEVITT GUTZLER LLC**
                           Ten North Dearborn Street, Sixth Floor
                           Chicago, Illinois 60602
                           Telephone:  312-214-7900
                           alevitt@dicellolevitt.com
                           akeller@dicellolevitt.com

                           Mark Lanier*
                           Alex Brown*
                           Skip McBride*
                           **THE LANIER LAW FIRM PC**
                           10940 West Sam Houston Parkway North
                           Suite 100
                           Houston, Texas 77064
                           Telephone:  713-659-5200
                           WML@lanierlawfirm.com
                           alex.brown@lanierlawfirm.com
                           skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

***Counsel for Plaintiffs
and the Proposed Classes***

\*Applications for admission *pro hac vice* to be filed